Barbara J. Stevens, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 14, 1983, to Judges Williams, Jr., Doyle and Barbieri, sitting as a panel of three.

*James T. Rague, Spencer, Gleason & Hebe,* for petitioner.

*John T. Kupchinsky,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., March 29, 1984:

Barbara J. Stevens (claimant) appeals an order of the Unemployment Compensation Board of Review, which denied her benefits pursuant to Section 402(b) of the Unemployment Compensation Law[1] on the basis that she voluntarily left work without cause of necessitous and compelling nature.

The claimant does not challenge the Board's factual findings, which reflect the following scenario: Until she quit her job on August 24, 1979, the claimant was employed for five years as a machine operator, earning approximately $5.00 per hour. She lived in Williamsport with her two children. In April of 1979, her ex-husband returned to Williamsport from Colorado, where he was born and where he moved after the couple divorced in or about 1974. Upon his return to Williamsport, he resumed residence with the claimant. On June 2, 1979, the couple were remarried.

From April through early August of 1979, the claimant's husband was unable to secure employment in the Williamsport area. He, therefore, returned to Colorado, where he secured employment which paid $11.77 per hour. Subsequently, on August 24, 1979, the claimant voluntarily terminated her employment in order to move to Colorado to be with her husband. Despite her relocation, the marriage foundered, and the couple separated again. On September 16, 1979,

---

[1] Act. of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1). Under this section, a claimant is disqualified from receiving benefits if he has quit his employment without "cause of a necessitous and compelling nature."

the claimant applied for benefits. The claimant contends that these findings satisfy her burden of showing that her voluntary termination was due to reasons which were necessitous and compelling. We agree.

Domestic circumstances as a basis for quitting one's job has enjoyed varying degrees of acceptance under the Law. In 1953, Section 402(b) of the Law was amended to exclude marital, filial and domestic reasons as good cause for quitting.[2] Two years later, the legislature repealed the exception and substituted language which was construed by our Supreme Court as restoring marital, filial and domestic circumstances and obligations to the category of reasons which might qualify a claimant for benefits.[3] *See Savage v. Unemployment Compensation Board,* 401 Pa. 501, 165 A.2d 374 (1960). In 1959, Section 402(b) was amended again to make a claimant ineligible for compensation for any week:

> . . . (1) In which his unemployment is due to voluntary leaving work without cause of a necessitous and compelling nature . . . (2) In which his or her unemployment is due to leaving work (I) to accompany or to join his spouse in a new locality, or (II) because of a marital, filial or other domestic, obligation or circumstances. . . .[4]

Our Supreme Court, in *Richards v. Unemployment Compensation Board of Review,* 491 Pa. 162, 420 A.2d 391 (1980), held that, under this section, quitting a job in order to join a wife or husband in another location was only disqualifying if that was the primary reason for leaving; if other factors, such as economic necessity, or commuting problems motivated the move, the claimant was eligible. Finally, in 1980, the legislature

---

[2] Act of August 24, 1953, P.L. 1397, §4.

[3] Act of March 30, 1955, P.L. 6, No. 5, §5.

[4] Act of December 17, 1959, P.L. 1893, §8.

amended the section to eliminate the domestic circumstance exception. Thus, even under the 1959 version of the Law, the presence of domestic factors in motivating a quit did not preclude eligibility so long as other compelling reasons dominated the decision to separate, and since 1980, there has been no distinction made between domestic, filial and marital circumstances—including the obligation to join a relocated spouse—and other reasons for quitting a job. *Kleban v. Unemployment Compensation Board of Review*, 73 Pa. Commonwealth Ct. 540, 459 A.2d 53 (1983).

In cases involving domestic reasons for quitting, as in any case in which voluntary termination is at issue, it is the claimant's burden to show that the reasons motivating the quit were ". . . both real and substantial, and . . . would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977); *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A.2d 898 (1946). Furthermore, we have held that where a claimant quits a job to follow a spouse to a new location, the following spouse must show not only that overwhelming circumstances such as economic hardship or insurmountable commuting problems necessitated his or her quit, but also that circumstances beyond the other spouse's control necessitated that spouse's relocation. *Wheeler v. Unemployment Compensation Board of Review*, 69 Pa. Commonwealth Ct. 201, 450 A.2d 775 (1982). This standard was adopted to respond to concerns that if benefits were awarded to a following spouse where the other spouse relocated for purely personal reasons, the unemployment compensation fund would become a subsidy for the livelihood of families suffering from self-imposed financial hardship. *Id.; Kleban; but see* dissenting opinion of BLATT, J. in *Wheeler*, 69 Pa. Com-

monwealth Ct. at 207, 450 A.2d at 778-79. Our review of the Board's findings and the record as a whole convinces us that the claimant has satisfied her burden of proof.

It is readily apparent that the distance between Williamsport and Colorado presents insurmountable commuting problems. What, if any effort the claimant's husband made to find work less distant from Williamsport is evident from neither the Board's findings nor the record. However, we will infer from the Board's finding that "[t]he claimant's husband was unable to secure employment *in the Williamsport area* and in early August 1979, he returned to his native state, Colorado to seek employment." (emphasis added), that there was no work available to him reasonably proximate to his and the claimant's Williamsport home. This finding by the Board also refutes any notion that the husband's relocation was motivated purely by personal preference. The Board specifically found that the husband's purpose in relocating was to find employment. Furthermore, we find nothing unreasonable in the husband's decision to look for employment in the place where he recently resided and where he had family ties.

In urging our affirmance of its denial of benefits, the Board contends that economic necessity could not have been a motivating factor for the claimant's decision to quit her job in order to follow her husband. The Board argues that the claimant had supported herself and her children during the years that she and her husband were separated, and could have continued to do so after her husband returned to Colorado. Whether she could have continued to support herself and family is hardly determinative of this appeal, as economic hardship is not the only domestic circumstance which will justify quitting a job. *See Wheeler.* While preservation of the family unit does not, in and

of itself, give rise to necessitous and compelling reason under Section 402(b)(1), *Id.*, we are not indifferent to its social desirability. Moreover, in the absence of statutory language mandating such application, we are disinclined to interpret the Law in a way which tends to be disruptive to family unity. In this case, we believe it is sufficient that the claimant has demonstrated a good faith desire to keep her family together, that her interest in preserving the family unit was irreconcilable with maintenance of her job due to the distance between her's and her husband's places of employment, and that her husband's decision to relocate was motivated by compelling factors.

Accordingly, the decision and order of the Unemployment Compensation Board of Review is reversed.

ORDER

AND Now, this 29th day of March, 1984, the order of the Unemployment Compensation Board of Review at B-183195-B is reversed, and the case remanded for calculation of benefits.